UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ruth McNee a/k/a Ruth Koscielak,

Plaintiff,

vs.

CBS Corporation; CBS Broadcasting, Inc., d/b/a WCCO AM, Jim Gustafson, and Chuck Dickemann,

Defendants.

DWF/SRN
Case No. 00-CV-1096

**STIPULATION TO AMEND COMPLAINT**
AND ORDER

---

**WHEREAS,** Defendants have notified Plaintiff that CBS Corporation is no longer an existing entity, that CBS Broadcasting, Inc. no longer owns or operates radio station WCCO-AM, that WCCO-AM is not a separate business entity, that WCCO-AM's current owners and licensees are Infinity Broadcasting Corporation and Infinity Media Corporation, that Infinity Broadcasting Corporation and Infinity Media Corporation are the real parties in interest in this litigation and should be named in plaintiff's complaint and listed on the caption, and that CBS Corporation and CBS Broadcasting, Inc. should be removed from the caption; and

**WHEREAS,** Defendants' counsel also represents Infinity Broadcasting and Infinity Media Corporation for purposes of this stipulation, and Infinity Broadcasting and Infinity Media Corporation consent to this stipulation and their substitution as the named corporate defendants in this case; and

**WHEREAS,** Infinity Broadcasting and Infinity Media Corporation represent that they are the correct corporate entities for Plaintiff's employment related claims and have sufficient resources to satisfy a judgment that may arise from this matter; and

FILED JUN 06 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

**WHEREAS,** in reliance on Defendants' representations, Plaintiff has agreed to remove CBS Corporation and CBS Broadcasting, Inc. from the caption of the Complaint and add Infinity Broadcasting Corporation and Infinity Media Corporation to the caption; and

**WHEREAS,** the Parties have reached an agreement whereby Defendant would stipulate to a revised version of the Complaint that modifies the caption, in the form attached hereto as Exhibit A; and,

**WHEREAS**, the Parties request the Court to enter an Order allowing the proposed amendment to Plaintiff's Complaint as referenced in the attached Exhibit A, and allowing Plaintiff to serve the Third Amended Complaint on Defendants and file it with the Court.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among the above-captioned Parties, and their Counsel, that Plaintiff may amend her Complaint as set forth in the Third Amended Complaint, attached hereto as Exhibit A, and that the Court may enter an Order allowing the amendments.

IT IS SO STIPULATED:

**RIDER, BENNETT, EGAN & ARUNDEL, LLP**

By Autumn L. Huiras

Sheila Engelmeier (#175250)
Karen A. Janisch (#236573)
Autumn L. Huiras (#277472)
Attorneys for Plaintiff
333 South Seventh Street
Suite 2000
Minneapolis, Minnesota 55402
(612) 340-7951

Dated: May 25, 2001

**FAEGRE & BENSON LLP**

By Kristen Ludgate

David J. Goldstein (#175572)
Kristen M. Ludgate (#286965)
Attorneys for Defendants
2200 Norwest Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
(612) 336-3000

Dated: May 31, 2001.

# ORDER

Based on a Stipulation To Amend the Complaint by the above-named Plaintiff and Defendants:

**IT IS HEREBY ORDERED**, that the Plaintiff is granted leave to amend her Complaint as set forth in the Third Amended Complaint, attached thereto as Exhibit A, and that she is allowed to serve her Third Amended Complaint on Defendants.

**BY THE COURT**

Dated: June 6, 2001.

Susan Richard Nelson
Honorable United States Magistrate Judge
Susan Richard Nelson

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ruth McNee a/k/a Ruth Koscielak,

Plaintiff,

vs.

Infinity Broadcasting Corporation and Infinity Media Corporation, d/b/a WCCO AM, Jim Gustafson, and Chuck Dickemann,

Defendants.

DWF/SRN
Case No. 00-CV-1096

**THIRD AMENDED COMPLAINT**

---

Plaintiff Ruth McNee, for her Third Amended Complaint against Defendants Infinity Broadcasting Corporation and Infinity Media Corporation, d/b/a WCCO AM (jointly referred to as "WCCO"), Jim Gustafson ("Gustafson") and Chuck Dickemann ("Dickemann") (collectively "Defendants") states and alleges as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Ruth McNee is a forty-four-year-old female. At all times relevant to this matter, McNee resided in Stillwater, Minnesota. McNee was employed by WCCO from March 1981 until she was summarily terminated on March 30, 1998.

2. At all times relevant to this matter, Infinity Broadcasting Corporation was a Delaware Corporation and Infinity Media Corporation was a Delaware Corporation. Infinity Broadcasting Corporation and Infinity Media Corporation have their principal headquarters located in New York. At all times relevant to this matter, Infinity Broadcasting Corporation and Infinity Media Corporation owned, operated and licensed WCCO AM , a local radio station with its station and offices located in Minneapolis, Minnesota. As used in this

EXHIBIT
A

Second Amended Complaint, "WCCO" refers collectively to Infinity Broadcasting Corporation and Infinity Media Corporation and their Minnesota business operation WCCO AM.

3. At all times relevant to this matter, Defendant Gustafson was an individual employed as the general manager of WCCO AM. At all times relevant to this matter, Gustafson resided in Plymouth, Minnesota.

4. At all times relevant to this matter, Defendant Dickemann was an individual employed as the program director for WCCO AM. Dickemann resided in Maple Grove, Minnesota.

5. Venue is proper in Hennepin County. Plaintiff was employed in Hennepin County and Defendants reside or conduct business in Hennepin County. In addition, the primary events giving rise to this action occurred in Hennepin County.

**FACTS**

6. McNee was employed by WCCO from 1981 until March 30, 1998 as a radio announcer. At the time her employment was terminated, McNee was forty two years old and had been employed by WCCO for 17 years.

7. McNee was the first female program host at WCCO and, for most of her career at WCCO, the only female program host.

8. Throughout her employment, McNee's qualifications and satisfactory performance were repeatedly recognized through WCCO's increases of her annual compensation and the high level of personalized advertisements she was hired to perform.

9. McNee was well known in the local broadcasting community, business community and the community as a whole. This was reflected not only in her longevity and continued popularity, but also in her continued success in personalized advertisements for WCCO.

10. WCCO obtained a premium payment for personalized advertisements by McNee. Based on information and belief, McNee's rates for personalized advertising were one of the highest of all the announcers at WCCO. Moreover, at the time of her termination, McNee generated more revenue for WCCO for personalized advertisements than any other announcer.

11. On or around April 1995, WCCO hired Jim Gustafson as WCCO's general manager. Soon after Gustafson was hired, McNee experienced work-related problems stemming from Gustafson's disparate treatment of female employees and, in specific, McNee.

12. On or around January 1997, WCCO hired Dickemann as the new program director for WCCO. Although McNee had hoped that Dickemann's involvement would improve her treatment at WCCO, the differential treatment continued and worsened.

13. Through Gustafson and Dickemann, Defendants subjected McNee to a course of conduct intended to degrade and humiliate her and to ultimately force her out of her longstanding employment with WCCO. This conduct included, but was not limited to, personally derogatory comments about McNee, lack of support, differential treatment, tampering with her program and attempts to damage her relationships with her producer, the broadcasting community, advertisers and the business community.

14. McNee was subject to more shift changes and tampering with her program than any other announcer. Defendant Dickemann continued to tamper with McNee's program including actions that inserted programming into key portions of her time slot and programming that was undesirable and incongruent with the nature and format of McNee's show. When

McNee complained about programming decisions, her complaints were ignored and no action was taken.

15. McNee was also singled out from other announcers and required to drop her use of her producer during her show. On or around late 1995 or early 1996, Defendants initiated a practice of using "call screeners" during the shows. Despite her objections, McNee was the first announcer forced to use the call screener rather than her producer. Numerous younger and male announcers were allowed to continue using their producers during their shows. In fact, some male announcers were allowed to keep using their producers even well after McNee was terminated. Defendants repeatedly ignored McNee's complaints about this unfair treatment.

16. Defendants subjected McNee to further differential treatment in relation to other terms, conditions and privileges of employment, including but not limited to: opportunities to host "Good Neighbor" vacation tours through WCCO; opportunities to host vacation tours with outside travel companies, and the ability to be outside of the office during WCCO broadcasts of Twins baseball games.

17. Gustafson and Dickemann also placed and enforced restrictions on McNee that were not placed on other announcers. For example, McNee was prohibited from taping any interviews with guests. This hampered McNee's access to guests whose schedules did not allow them to appear live. Although hindering her ability to do so, Dickemann would at the same time criticize McNee for not obtaining guests with sufficient "general" appeal. Dickemann also forced McNee to change her program style by criticizing her and prohibiting her from interspersing any "gossip" into her show. Other younger and male announcers used gossip in their programs but were not criticized or forced to change their program style.

18. Defendants including Dickemann also subjected McNee to criticism and placed negative memos in her employment files in regard to programming choices that were the same or similar to program choices made by other announcers. Dickemann also required McNee to obtain "approval" for guests and program topics. No other program hosts were required to obtain this type of approval. Dickemann's restrictions and scrutiny of McNee's show and topics were demeaning and often contradictory. For example, Dickemann refused programming options or criticized McNee for programming choices in regard to certain topics or guests. At the same time, however, Dickemann was not critical and allowed other younger and male announcers to address the same or similar topics or have the same or similar guests on their shows.

19. Defendants including Dickemann and Gustafson also prevented McNee from hosting a promotion in connection with Target's float at the Rose Parade. Since the promotion was originated by Target and McNee in 1995, Gustafson had attempted to thwart McNee's participation despite the fact that the client requested McNee for the promotion. In 1997, despite the client's clear preference and request for McNee, Dickemann and Gustafson refused to allow her to participate. Defendants insisted that a younger male announcer do the promotion. Because Defendants refused to allow McNee to conduct the promotion, the client dropped WCCO and used another radio station.

20. Defendants also made numerous statements to McNee and others that were personally derogatory and demeaning and statements that reflected undue stereotyping of McNee, women and older women in particular. For example, Dickemann would routinely criticize selection of topics or guests who appeared on McNee's show claiming they were "fluff" or were somehow unappealing because they involved women. When some of the same or

similar guests and topics were part of other announcers' shows, they were not considered "fluff" or "unappealing." Defendants also made statements to McNee, and others reflecting stereotypes of women, particularly older women, including statements that McNee could only appeal to "little old ladies."

21. In September of 1997, McNee, through her husband, complained about Defendants' discriminatory treatment. Because McNee was previously criticized by Defendants for not informing Defendants of concerns of disparate treatment, McNee's husband contacted Gustafson's supervisor, Dan Mason, at Infinity's New York offices and informed Mason that McNee was concerned about differential treatment at WCCO. McNee's husband explained that McNee was previously told to report concerns to Infinity in New York. Despite this, McNee's husband was told McNee had to talk to Gustafson about her concerns despite the fact that Gustafson was an integral part of the problem. Infinity did not take any action to identify or investigate McNee's concerns of discriminatory treatment.

22. On or around September 18, 1997, McNee's attorney met with Gustafson to discuss McNee's complaints of discriminatory treatment. Gustafson was aware McNee had attempted to contact Infinity about her complaints and expressed anger at McNee for contacting Infinity. Neither Gustafson nor WCCO took any action to investigate, resolve or remedy McNee's concerns of discrimination. In fact, WCCO did not even contact her to discuss her concerns.

23. Following these complaints, Defendants' scrutiny and differential treatment of McNee intensified. For example, McNee was subjected to numerous mandatory "meetings" with Dickemann and Gustafson to criticize her personally, and to criticize the content and substance of her radio show. Following these meetings, Defendant Dickemann would issue

written "memos" that were more critical than the tone of the meetings and contained information not discussed at the meetings. Male and/or younger announcers with similar issues in regard to ratings were not subjected to these types of meetings or criticisms and did not have negative memos placed in their files.

24. McNee was also singled out for excessive scrutiny and criticism for her "ratings" despite the fact that she continued to appeal to clients in regard to personalized advertisements and other advertising revenues and that she continued to obtain and retain more of these advertising revenues for WCCO than other announcers.

25. During the relevant time period, WCCO as a whole had sagging ratings. Despite the fact that McNee's ratings remained competitive with the ratings of other younger and male announcers, and the fact that McNee had the highest number of accounts for personalized advertising, and the highest revenue to WCCO for personalized advertising, McNee was singled out for disparate treatment and ultimately termination.

26. On March 30, 1998, Defendants terminated McNee. The manner in which the termination was carried out by Defendants reflected further differential treatment of McNee and was intentionally designed to humiliate McNee and damage her reputation in the broadcasting community, business community and in the eyes of the public.

a. Defendants terminated McNee on the day she returned from a scheduled and approved vacation.

b. Upon her return from vacation Dickemann left McNee a message at the station at approximately 10:30 a.m. on her answering machine asking McNee to meet him at a hotel bar to discuss program issues. The termination was carried out in this public location.

c. McNee had 3 ½ months remaining on her individual employment contract with WCCO. McNee was given no notice that Defendants intended to terminate the contract and was never given written notice of the termination as required by her contract.

d. When she arrived at the hotel bar as directed, Dickemann and Gustafson were present. They handed McNee a press release that stated she "left" the station. McNee asked if she was being fired and Gustafson and Dickemann nodded.

e. Shocked by the termination, McNee asked "Why?" Dickemann had no response. Gustafson finally smiled at her and said "because you are unsuitable."

f. When McNee asked if she could return to the station to say good-bye to her colleagues, Defendants refused this request and refused to allow her to return to the station. She was told she could retrieve her personal belongings at a later time and that WCCO would have a guard present.

g. In addition to the press release, Defendants handed McNee a severance agreement stating McNee agreed to "resign." Defendants confirmed that McNee would have time to consider the documents. McNee understood she would have a chance to review the severance agreement and any public announcement about the termination. However, without any notice or discussion with McNee, Defendants immediately announced her termination internally at WCCO and to the public. McNee was given no options to negotiate the terms of her departure or the substance of the announcement.

h. The proposed severance agreement given McNee by Defendants conditioned her proposed "resignation" (although the nature of the public disclosure had made it clear she was fired) upon her waiving all her legal rights. It also offered her <u>less</u> in "severance" than she was entitled to receive under the terms of her contract and the collective bargaining agreement.

i. Defendants terminated McNee right before the winter 1998 ratings were available. As expected, the winter ratings reflected a rise in McNee's ratings.

27. Defendants handled the termination of McNee's employment very differently than other younger and male announcers. Other employees were allowed to finish or negotiate the

terms of their contracts, allowed to part ways with WCCO amicably, allowed to negotiate the terms of their departure, were internally and publically praised in relation to their services to WCCO and the broadcasting community, and received significant promotion from WCCO in relation to their departures. Throughout her career as an announcer for WCCO, no other radio announcer was ever terminated in a manner similar to the mean-spirited, cruel and humiliating manner that Defendants terminated McNee's employment.

28. McNee was singled out by Defendants to be terminated in a manner that was intended and calculated to destroy her reputation. In fact, the manner in which she was terminated implied she was incompetent or had engaged in serious misconduct. Following her termination McNee and others received numerous inquiries from persons associated with the broadcasting community, the business community and the public asking what she "really" did to get fired and treated like she had been by Defendants.

29. WCCO immediately replaced McNee with two male employees, one of whom was younger than McNee. The male announcers assigned to McNee's position were previously in time slots that had rating issues similar to McNee's prior to her termination. Following McNee's termination, Defendants also hired two male announcers in their 20s.

30. Following McNee's termination, the ratings for her time slot dropped. WCCO also lost significant advertising revenue in relation to businesses that had used McNee for personalized advertisements.

31. Over the course of the past approximately four years, Defendants have significantly reduced the number of older announcers at WCCO. Defendants have terminated, forced out, non-renewed or bought out the contracts for a significant number of its announcers who were over the age of forty.

32. Since McNee's termination, WCCO's overall ratings have continued to trend downward. However, no other announcers have been terminated in the same manner as McNee.

**COUNT I**
**VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT**
**(GENDER DISCRIMINATION)**

33. McNee realleges and reasserts the allegations contained in paragraphs 1- 32 of this Second Amended Complaint and incorporates them by reference.

34. Defendant WCCO is an employer as defined under the Minnesota Human Rights Act, Minn. Stat. § 363.01 *et seq.*

35. McNee was at all times relevant to this matter an employee as defined under the Minnesota Human Rights Act, Minn. Stat. § 363.01 *et seq.*

36. McNee is a forty-four-year-old female employee.

37. Defendants engaged in an unfair employment practice under the Minnesota Human Rights Act, Minn. Stat. § 363.01 *et seq.* by discriminating against McNee on the basis of her sex. McNee was repeatedly discriminated against in regard to the terms, conditions, privileges and benefits of employment, was terminated on the basis of sex, and was discriminated against in regard to the nature and manner in which the termination was conducted.

38. Upon her termination, McNee's job responsibilities were assumed by male employees.

39. In September 1998, McNee filed charges with the Minnesota Department of Human Rights ("MDHR") alleging discrimination by WCCO, Gustafson and Dickemann alleging discrimination on the basis of sex. On or around March 1, 2000, McNee received notice from the MDHR of her right to sue.

40. Defendants have acted with deliberate disregard for the rights and safety of McNee.

41. As a direct and proximate result of defendants' discriminatory conduct, McNee has suffered lost wages and benefits, lost future wages and benefits, emotional distress, humiliation and pain and suffering associated with the emotional distress. Plaintiff seeks damages in excess of $50,000.00.

**COUNT II**
**VIOLATION OF 42 U.S.C. § 2000e *et seq.*,**
**AND THE CIVIL RIGHTS ACT OF 1991**
**(SEX DISCRIMINATION)**

42. McNee realleges and reasserts the allegations contained in paragraphs 1-41 of Second Amended Complaint and incorporates them by reference.

43. Defendant WCCO is an employer as defined under 42 U.S.C. § 2000e(b).

44. McNee was at all times relevant to this matter, an employee as defined under 42 U.S.C. § 2000e(f).

45. McNee is a forty-four year-old female.

46. Defendant WCCO engaged in an unfair employment practice by discriminating against McNee on the basis of her sex. McNee was repeatedly discriminated against in regard to the terms, conditions, privileges and benefits of employment, was terminated on the basis of sex, and was discriminated against in regard to the nature and manner of termination in violation of 42, U.S.C., § 2000e *et seq.*, specifically including § 2000e-2(a)(1) and (2) thereof, and the Civil Rights Act of 1991.

47. Upon her termination, McNee's job responsibilities were assumed by male employees.

48. McNee has complied with the procedural requirements of Title VII of the Civil Rights Act of 1964 by the filing of a charge of discrimination with the EEOC in September, 1998

alleging discrimination on the basis of sex by WCCO, Gustafson and Dickemann. On or around June 22, 2000, McNee received notice from the EEOC of her right to sue.

49. Defendant WCCO engaged in these discriminatory practices with malice or with reckless indifference to the federally protected rights of McNee.

50. By discriminating against McNee because of her sex, defendant WCCO has violated the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.*, thereby entitling McNee to such legal or equitable relief as provided for by the Act, including punitive and compensatory damages for lost wages and benefits, professional loss, and pain and suffering associated with emotional distress.

51. As a direct and proximate result of defendant WCCO's discriminatory conduct, McNee has suffered lost wages and benefits, lost future wages and benefits, emotional distress, humiliation and pain and suffering associated with the emotional distress. Plaintiff seeks damages in excess of $50,000.00.

**COUNT III**
**<u>VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT</u>**
**(AGE DISCRIMINATION)**

52. McNee realleges and reasserts the allegations contained in paragraphs 1- 51 of this Second Amended Complaint and incorporates them by reference.

53. Defendants engaged in an unfair employment practice under the Minnesota Human Rights Act, Minn. Stat. § 363.01 *et seq.* by discriminating against McNee on the basis of her age. McNee was repeatedly discriminated against in regard to the terms, conditions, privileges and benefits of employment, was ultimately terminated on the basis of her age, and was discriminated against in regard to the nature and manner in which the termination was conducted.

54. McNee's job responsibilities were assumed by younger employees. In addition, as a result of McNee's termination, WCCO hired two significantly younger announcers.

55. Defendants have acted with deliberate disregard for the rights and safety of McNee.

56. As a direct and proximate result of defendants' discriminatory conduct, McNee has suffered lost wages and benefits, lost future wages and benefits, emotional distress, humiliation and pain and suffering associated with the emotional distress. Plaintiff seeks damages in excess of $50,000.00.

**COUNT IV**
**VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 *et seq.***

57. McNee realleges and reasserts the allegations contained in paragraphs 1-56 of this Second Amended Complaint and incorporates them by reference.

58. Defendant WCCO is an employer as defined by 29 U.S.C. § 630(b).

59. McNee, at all times relevant hereto, was an employee as defined by 29 U.S.C. § 630(f) and an individual at least 40 but less than 70 years of age and, therefore, a class of person under the protection of the ADEA.

60. Defendant WCCO engaged in an unfair employment practice under 29 U.S.C. § 621 *et seq.* by discriminating against McNee on the basis of her age.

61. McNee was repeatedly discriminated against in regard to the terms, conditions, privileges and benefits of employment, and was ultimately terminated on the basis of her age.

62. McNee's job responsibilities were assumed by younger employees. In addition, as a result of McNee's termination, WCCO hired two significantly younger announcers.

63. By discriminating against McNee because of her age, defendant WCCO has violated 29 U.S.C. § 621 *et seq.*, thereby entitling McNee to such legal or equitable relief as provided

for in 29 U.S.C. § 626, including but not limited to, lost wages and benefits, future wage loss, liquidated damages, attorneys' fees and costs.

64. Defendant WCCO engaged in these discriminatory practices with malice or with reckless indifference to the federally protected rights of McNee.

65. As a direct and proximate result of defendant WCCO's discriminatory conduct, McNee has suffered lost wages and benefits, lost future wages and benefits, emotional distress, humiliation and pain and suffering associated with the emotional distress. Plaintiff seeks damages in excess of $50,000.00.

**COUNT V**
**VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT**
**(REPRISAL DISCRIMINATION)**

66. McNee realleges and reasserts the allegations contained in paragraphs 1-65 of this Second Amended Complaint and incorporates them by reference.

67. McNee engaged in protected conduct under the Minnesota Human Rights Act by opposing practices forbidden by the Minnesota Human Rights Act and by initiating complaints to Defendants about discriminatory treatment prohibited by the Act.

68. Defendants engaged in an unfair discriminatory practice under the Minnesota Human Rights Act by intentionally retaliating against McNee for engaging in protected activities.

69. Defendants engaged in acts of intimidation, retaliation, or harassment of McNee, departed from customary employment practices; treated McNee less favorably in regard to the terms, conditions, and privileges of employment and ultimately terminated her employment in retaliation for her protected activity.

70. Defendants have acted with deliberate disregard for the rights and safety of McNee.

71. As a direct and proximate result of defendants' discriminatory conduct, McNee has suffered lost wages and benefits, lost future wages and benefits, emotional distress, humiliation and pain and suffering associated with the emotional distress. Plaintiff seeks damages in excess of $50,000.00.

**COUNT VI**
**VIOLATION OF 42 U.S.C. § 2000e *et seq.***
**AND THE CIVIL RIGHTS ACT OF 1991**
**(REPRISAL DISCRIMINATION)**

72. McNee realleges and asserts the allegations contained in paragraphs 1-71 of this Second Amended Complaint and incorporates them by reference.

73. McNee engaged in protected conduct under 42 U.S.C. § 2000e-3 by opposing practices made unlawful by 42 U.S.C. § 2000e *et seq.* and by initiating complaints to Defendants about discriminatory treatment prohibited by the Act.

74. Defendant WCCO engaged in unlawful employment practices under 42 U.S.C. § 2000e-3 by intentionally retaliating against McNee for engaging in protected activities.

75. Defendant WCCO engaged in acts of discrimination, intimidation, retaliation or harassment of McNee, departed from customary employment practices, treated McNee less favorably in regard to the terms, conditions and privileges of employment and ultimately in retaliation of her protected activities.

76. McNee, during the entire term of her employment with defendants, performed her duties in a competent and commendable manner.

77. Defendant WCCO has engaged in these discriminatory practices with malice or with reckless indifference to the federally protected rights of McNee.

78. As a direct and proximate result of defendant WCCO's discriminatory conduct, McNee has suffered lost wages and benefits, lost future wages and benefits, emotional distress, humiliation and pain and suffering associated with the emotional distress. Plaintiff seeks damages in excess of $50,000.00.

**COUNT VII**
**<u>VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT</u>**
**(AIDING AND ABETTING DISCRIMINATION)**

79. McNee realleges and reasserts the allegations contained in paragraphs 1- 78 of this Second Amended Complaint and incorporates them by reference.

80. Defendants Gustafson and Dickemann intentionally aided and abetted the gender, age and reprisal discrimination against McNee.

81. These actions were taken by Defendants Gustafson and Dickemann to intentionally force McNee from her employment and interfere with her current and future employment with WCCO.

82. These actions were also taken by Defendants Gustafson and Dickemann to harm McNee's future employment prospects in local broadcasting, to interfere with her contacts and relationships with local businesses and to destroy her public image.

83. Defendants have acted with deliberate disregard for the rights and safety of McNee.

84. As a direct and proximate result of Defendants Gustafson and Dickemann's discriminatory conduct, McNee has suffered lost wages and benefits, lost future wages and benefits, emotional distress, humiliation and pain and suffering associated with the emotional distress. Plaintiff seeks damages in excess of $50,000.00.

**COUNT VIII**
**DEFAMATION**

85. McNee realleges and reasserts the allegations contained in paragraphs 1-84 of this Second Amended Complaint and incorporates them by reference.

86. Defendants Gustafson, Dickemann, and WCCO told McNee that she was terminated because she was "unsuitable." Defendants knew, or should have known, that McNee would be forced to repeat the reason given for her discharge to prospective employers, clients and others.

87. Defendants Gustafson, Dickemann, and WCCO widely published statements that McNee was terminated because she was unsuitable.

88. Following McNee's termination, Defendants and other members of WCCO management scheduled and conducted sales meetings and other meetings with McNee's former colleagues. During these meetings, Defendants including Gustafson, Dickemann and News Editor Jeff McKinney made false, defamatory, verbal communications to McNee's former colleagues implying that McNee was a poor announcer or otherwise incompetent, including but not limited to statements that McNee, "was like a baseball player who couldn't make the team anymore," "wasn't a hard worker," "had been calling advertisers to interfere with the advertisers' contracts with WCCO," and "was gone because she was incompetent."

89. Following McNee's termination, Defendants' sales representatives and Gustafson and Dickemann planned and conducted a series of sales calls to businesses to whom McNee had provided personalized advertisements and endorsements. During those sales calls to McNee's clients, Gustafson and Dickemann made false, defamatory, verbal communications to McNee's clients intended to imply to clients that McNee was incompetent and unpopular with the public.

a. Defendants including Gustafson and Dickemann made false communications about McNee's popularity with radio audiences when they stated McNee was fired for "ratings;" statements to "look at the numbers" and that McNee's "numbers are going down, it's time for a change" and false statements regarding McNee's marketability and effectiveness as a radio talent by stating McNee's "ratings had gone down," and that "her audience was growing too old" and that she was only "popular with the little old ladies."

b. Defendants including Gustafson and Dickemann also made false statements about McNee by telling her clients WCCO terminated McNee because WCCO needed to "increase the numbers" and "strengthen the afternoon" at its station, despite the fact that the show they scheduled to replace McNee was very weak. Gustafson admitted to at least one client he "knew Tim's show was weak."

c. Defendants including Gustafson and Dickemann made false verbal communications to McNee's clients by saying that, "she was not pulling the numbers she needed to pull," "she was not being cooperative with the changes [WCCO was] implementing to make her show work," "she was the weak link in the chain," "she was real popular with the little old ladies" and "she was not delivering what she needs to."

90. The defamatory nature of Defendants' statements was also supported and exacerbated by the manner in which her termination was carried out and publicized.

91. Defendants' false verbal and written communications to McNee's former colleagues, clients and members of the community were knowingly false and defamatory.

92. Defendants' statements concerning McNee were not privileged.

93. Defendants made the defamatory statements with actual malice knowing the statements were false, and with reckless disregard for whether the statements were true. Defendants' statements were made for the purpose of economically and personally injuring McNee and her reputation in the community.

94. The false and defamatory statements severely injured and harmed McNee's personal and professional reputation and have lowered her reputation in her business and in the community, and have lowered her in the estimation of the community.

95. As a direct and proximate result of Defendants' defamatory statements, McNee has been damaged, has suffered and continues to suffer losses, including, but not limited to, emotional distress, mental anguish, pain and suffering, humiliation, damage to her name and reputation and both past and future lost earnings in excess of Fifty Thousand Dollars ($50,000).

**COUNT IX**
**TORTUOUS INTERFERENCE**

96. McNee realleges and reasserts the allegations contained in paragraphs 1-95 of this Second Amended Complaint and incorporates them by reference.

97. In July 1995, Defendant WCCO and McNee entered into a three-year contract related to her employment.

98. The employment relationship between McNee and Defendant WCCO was terminated by McNee's discharge on March 30, 1998.

99. Defendants Gustafson and Dickemann were aware of the employment relationship between McNee and WCCO.

100. Defendants Gustafson and Dickemann intentionally and improperly procured the breach of the employment relationship between McNee and WCCO.

101. Defendants Gustafson and Dickemann had no justification for their actions, their actions were predominantly motivated by malice and bad faith, that is, by personal ill-will, spite, hostility, or a deliberate intent to harm McNee, and their actions were outside the course and scope of their duties.

102. Defendants Gustafson and Dickemann have tortuously interfered with McNee's employment relationship with WCCO.

103. Defendants Gustafson and Dickemann have acted with deliberate disregard for the rights and safety of McNee.

104. As a direct and proximate result of Defendants Gustafson and Dickemann's tortuous interference, McNee has suffered and continues to suffer losses including, but not limited to, past and future lost earnings, emotional distress, mental anguish, pain and suffering, humiliation, and embarrassment in an amount in excess of Fifty Thousand Dollars ($50,000.00).

## COUNT X
## BREACH OF CONTRACT

105. McNee realleges and reasserts the allegations contained in paragraphs 1-104 of this Second Amended Complaint and incorporates them by reference.

106. In July 1995, Defendant WCCO and McNee entered into a three-year contract related to her employment.

107. WCCO breached the terms of the employment contract when it summarily fired McNee. The contract adopted portions of the collective bargaining agreement and, thereby, limited the grounds for which Defendants could terminate the contract to "unsuitability for the Company's broadcasting" or "just cause" as defined by the collective bargaining agreement. Neither of these grounds for termination existed.

108. WCCO breached the terms of the employment contract when it orally terminated the contract.

109. As a direct and proximate result of Defendants' breach of the contract, McNee has suffered economic losses and related damages in excess of Fifty Thousand Dollars ($50,000).

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

110. McNee realleges and reasserts the allegations contained in paragraphs 1-109 of this Second Amended Complaint and incorporates them by reference.

111. Defendants WCCO, Dickemann and Gustafson engaged in a course of conduct that was intended to force McNee out of her employment, subject her to extreme emotional distress, publically embarrass and humiliate her and destroy her reputation, relationship with her advertising clients and business prospects.

112. The conduct of WCCO, Gustafson and Dickemann was extreme, outrageous and beyond the bounds of common decency.

113. The conduct was of the type and nature that was anticipated to cause a reasonable person severe emotional distress and did, in fact, cause McNee severe emotional distress.

114. As a direct and proximate result of these intentional actions, McNee has suffered severe and permanent injuries, was forced to endure great pain, humiliation, and mental suffering, and was forced to incur continuing medical bills, income loss, and other damages in excess of $50,000.

**DEMAND FOR JURY TRIAL**

115. Plaintiff McNee requests a jury trial on all counts so triable.

WHEREFORE, Plaintiff McNee seeks judgment in her favor and against Defendants as follows:

a. Judgment against each Defendant for an award of compensatory damages in excess of Fifty Thousand Dollars ($50,000.00) for each of the claims set forth in the Second Amended Complaint;

b. Treble damages against each of the Defendants pursuant to Minn. Stat. § 363.01 *et seq.*

c. Punitive damages against each of the Defendants pursuant to Minn. Stat. § 363.01 *et seq.*

d. Punitive damages against Defendant WCCO pursuant to 42 U.S.C. § 1981(a)(b)(1);

e. Judgment against Defendants for interest, attorneys' fees, costs and disbursements; and

f. Such other relief as the Court deems just and equitable.

**RIDER, BENNETT, EGAN & ARUNDEL, LLP**

By [signature]
Sheila Engelmeier (#175250)
Karen A. Janisch (#236573)
Autumn L. Huiras (#277472)
Attorneys for Plaintiff
333 South Seventh Street
Suite 2000
Minneapolis, Minnesota 55402
(612) 340-7951

Dated: May 25, 2001

**ACKNOWLEDGMENT**

The parties upon whose behalf this pleading is submitted, by and through the undersigned, hereby acknowledge(s) that sanctions may be imposed for a violation of Minn. Stat. § 549.211.

**RIDER, BENNETT, EGAN & ARUNDEL, LLP**

By [signature]
Sheila Engelmeier (#175250)
Karen A. Janisch (#236573)
Autumn L. Huiras (#277472)
Attorneys for Plaintiff
333 South Seventh Street
Suite 2000
Minneapolis, Minnesota 55402
(612) 340-7951

Dated: May 25, 2001

677006.1